# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                        REPORT AND
                                        RECOMMENDATION
                                        07-CR-6088L

    v.

ROBERT FRANK HERMAN,

        Defendant.

_____

### Preliminary Statement

By Order of Judge David G. Larimer, dated June 22, 2007, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket #9). The following is my Report and Recommendation as to the defendant's suppression motion.

Defendant Robert Frank Herman moves to suppress a written but unsigned statement he gave to law enforcement and certain evidence seized from his residence. (Docket #18). Both the statement and the tangible evidence were obtained from Herman on the day of his arrest, May 23, 2007. The Government filed papers in opposition to Herman's motion. (Docket #19). A suppression hearing was held on December 11, 2007 (Docket #25), after which the parties filed supplemental memoranda of law. (Docket #28, 29).

While the chronology of events on May 23, 2007 were largely undisputed, there were material differences in certain critical areas. These differences necessarily required the Court to make credibility determinations, taking into account the events

described, the manner in which the witness described the events, and the plausibility of the version of events adopted by the witness.

## Findings of Fact

After consideration of the evidenced adduced at the suppression hearing and review of the post hearing submissions by counsel, the Court makes the following factual findings.

In May 2007, Special Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") were conducting an investigation into defendant Robert Frank Herman for impersonating an ATF agent over the telephone. See Transcript of December 11, 2007 Suppression Hearing [hereinafter "Tr."] at 5 (Docket 25). In the early afternoon of May 23, 2007, ATF Special Agent Christopher Robinson and Rochester Police Officer Robert Jobe went unannounced to Herman's house at 172 Afton Street to interview him with respect to the alleged impersonation. Tr. at 5-6. When Robinson and Jobe arrived at 172 Afton Street, they found Herman sitting alone on his front porch. Tr. at 8. As they approached Herman's front porch, both Robinson and Jobe possessed their firearms; Officer Jobe's firearm was in plain view. Tr. at 10-11.

Herman was known to Jobe and Robinson as a convicted felon and registered sex offender. Tr. at 9. After identifying themselves as law enforcement, Herman was asked to stand and permit the

2

officers to conduct a pat-down of his outer clothing.  Tr. at 68.
Herman complied.  Tr. at 68.  After the pat down was completed,
Herman was directed to sit back down on his front porch.  Tr. at
68.   Robinson  and  Jobe  then  began  questioning  Herman  about
allegations that Herman had impersonated an ATF agent.  Tr. at 11.
Although assured by Agent Robinson that they were not there to
arrest  him,  but  just  wanted  to  ask  a  few  questions,  Herman
testified that he was nervous when the officers approached.  Tr. at
68-69.  Robinson agreed that Herman did seem nervous, moving his
hands about and speaking rapidly.  Tr. at 13-14.  In response to
Robinson's  questioning,  Herman  made  verbal  admissions  about
impersonating an ATF agent and offered his explanation as to his
reasons for doing so.  Tr. at 12, 68-69.

Agent Robinson testified that he and Jobe engaged Herman in
consensual questioning for about ten to fifteen minutes outside of
Herman's residence.  Tr. at 13.  While most of the questioning
concerned  the  alleged  impersonation,  Robinson  also  confronted
Herman about whether he had used an inaccurate address on his New
York State Sex Offender Registration Form.  Tr. at 69-70.  When
Herman  was  handed  the  form  and  asked  to  explain  the  address
discrepancy, Herman began to fear that he was going to be arrested.
Tr. at 69-71.  At this point, Robinson suggested to Herman that
they continue their conversation inside Herman's residence so as
not to disturb nearby neighbors.  Tr. at 71.  Herman agreed to go

3

inside the house with Jobe and Robinson.   Tr. at 71.

Once inside the home, Agent Robinson directed Herman to a living room chair to continue the questioning.   Tr. at 87.   Agent Robinson again told Herman that he was not there to arrest him and he and Jobe were "almost done."   Tr. at 87.   Robinson handed Herman an ATF affidavit form (Hearing Exhibit 1) and asked Herman to write down in his own handwriting the details of his impersonation of an ATF agent.   Tr. at 72.   Herman agreed and completed the first paragraph of the ATF form in his own handwriting.   Tr. at 25, 73.

While Herman was writing, Agent Robinson continued to question him.   Tr. at 27.   Robinson asked Herman if he had any firearms in the house and Herman initially said no.   Tr. at 20, 73-74. Robinson asked Herman if he could look around the house for firearms and Herman consented.   Tr. at 21.   Agent Robinson then went from room to room in the residence looking for firearms.   Tr. at 22.   Officer Jobe stayed with Herman while Robinson was conducting his search.   Tr. at 77-78.   At some point during the search, Jobe and Herman exited the home and went outside.   Tr. at 78.   After several minutes, Robinson exited the residence and asked Herman if he had any ammunition in the house.   Tr. at 78.   Herman immediately said yes, re-entered the house, went to the kitchen to retrieve the box of ammunition and handed the box of bullets to Robinson.   Tr. at 78.   Robinson then told Herman: "Now we have a problem."   Tr. at 78.   Herman testified that Robinson told him he

4

no longer was sure Herman would not be arrested, but now needed to check with his supervisors. Tr. at 31, 94. Herman testified that shortly after he retrieved the ammunition for Robinson he was placed under arrest. Tr. at 107.

Robinson's memory as to the chronology of events was at times uncertain and difficult to follow. It appears from Robinson's testimony that at some point after his initial search of the residence was completed, he began a "further interview" of Herman and "inquired if he had any ammunition in the residence." Tr. at 29-30. Robinson testified that Herman answered the question in the affirmative, then stood up, walked into the kitchen and retrieved a box of bullets "and handed it to me." Tr. at 30. At that point, Robinson recalls telling Herman that it was unlawful for him to possess ammunition and he was going to have to notify the United States Attorney's Office for a decision on whether Herman would be arrested. Tr. at 31. Although Robinson's testimony was less than precise on <u>when</u> the second paragraph of Exhibit 1 was completed, I find that it was <u>after</u> the ammunition was found since the paragraph refers directly to the ammunition.

There is no dispute that once the ammunition was found, Robinson wanted to include it in the statement. Agent Robinson testified that Herman "was slow in his handwriting", so Robinson decided to "finish the statement for him." Tr. at 29. Robinson testified that in completing the second paragraph of Herman's

affidavit, he asked Herman questions and then wrote down Herman's answers.   Tr. at 32.   According to Robinson, after he finished writing the second paragraph, he gave the entire statement to Herman to review, but Herman refused to sign it.   Tr. at 32-33. For his part, Herman admits writing the first paragraph but unequivocally denies ever seeing, reading or making the statements contained in the second paragraph.   Tr. at 80.


### Discussion

Motion to Suppress Statements:   Herman seeks suppression of any statements he made in response to questioning by Jobe and Robinson on May 23, 2007.   According to Herman, his statements are inadmissible because they were the result of a custodial interrogation conducted without the benefit of Miranda warnings.

It is well settled that police may not interrogate a suspect who has been taken into custody without first advising him of his Miranda rights.   United State v. Newton, 369 F.3d 659, 668 (2d Cir. 2004).   However, it is only in the context of a custodial interrogation that a defendant is entitled to be informed of his Miranda rights.   Dickerson v. United States, 530 U.S. 428, 434-35 (2000); Tankleff v. Senkowski, 135 F.3d 235, 242-43 (2d Cir. 1998). Miranda's "in custody" requirement is met if questioning was "conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist

and to compel him to speak." <u>United States v. Morales</u>, 834 F.2d 35, 38 (2d Cir. 1987).

In determining custodial status, the test is "whether a reasonable person would have understood herself to be subjected to restraints comparable to those associated with a formal arrest," and whether there were any "affirmative indications that the defendant was not free to leave." <u>United States v. Kirsh</u>, 54 F.3d 1062, 1067 (2d Cir. 1995) (citation and quotations omitted).  An actual arrest is not a prerequisite for an accused to be "in custody."  Rather, it is sufficient "when law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave." <u>United States v. Badmus</u>, 325 F.3d 133, 138 (2d Cir. 2003) (citation and quotations omitted).

The May 23rd interaction between Herman and Agent Robinson pays tribute to the evolving nature of encounters between citizens and law enforcement.  What begins as a consensual encounter may not end up as one.   "[A]n initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" <u>I.N.S. v. Delgado</u>, 466 U.S. 210, 215 (1984) (<u>quoting</u> <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980)).

Here, Robinson and Jobe had  reasonable suspicion that Herman

had committed a crime by impersonating an ATF officer and approached him at his residence to investigate further.  Tr. at 5-7.  The officers found Herman sitting on his front porch.  Tr. at 8.  Although Robinson denies that either he or Jobe pat frisked Herman, I find it much more plausible that such a "pat down" did occur, particularly in light of Robinson's testimony that they knew Herman had multiple felony convictions for violent crimes and at various points in the encounter were concerned about officer safety.  The government concedes that, assuming a pat frisk of Herman did occur, it was not justified because neither Jobe or Robinson had reason to believe that Herman possessed a weapon.  Ybarra v. Illinois, 444 U.S. 85, 93 (1979).

Nevertheless, an unjustified pat down did not, standing alone, transform the subsequent police-citizen encounter into a custodial situation.  The pat down of Herman was brief, nothing was seized, his movement was not further restricted and Herman, still on his porch, thereafter voluntarily engaged in consensual conversation with Robinson about the ATF impersonation investigation.  At that point, "a reasonable person in the defendant's position would [not] have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." United States v. Ali, 68 F.3d 1468, 1472 (2d Cir. 1995)(citations and quotations omitted); see also United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004)("Miranda's focus is on the facts known to the seized

suspect and whether a reasonable person would have understood that his situation was comparable to a formal arrest.").

Nor was Herman in custody when he accepted Agent Robinson's suggestion that they continue their conversation inside Herman's residence. Courts generally find that questioning in a suspect's home is not custodial because the environment is familiar and hence the suspect is less likely to be intimidated by law enforcement. See United States v. Newton, 369 F.3d at 675 ("[I]nterrogation in the familiar surroundings of one's own home is generally not deemed custodial."); United States v. Mitchell, 966 F.2d 92, 99 (2d Cir. 1992)(finding that Miranda warnings were not required where entire interview occurred in the familiar surroundings of the suspect's home). Similarly, the first portion of the written statement Herman provided to Robinson was not the product of custodial interrogation. The substance of the written statement was a continuation of the consensual discussion about impersonating an ATF agent that began on the front porch. Herman concedes he wrote the statement and there is no credible evidence his handwritten paragraph was induced by threats, coercion or improper trickery. Indeed, at that juncture of the encounter Herman testified that Robinson had repeatedly assured him that he was not going to be arrested and they were "almost done." Tr. at 87. Telling a suspect he is not under arrest and is not going to be arrested at the end of the interview is a "significant factor" in determining

9

custodial status.   <u>United States v. Newton</u>, 369 F.3d at 676-77.

Based on the totality of circumstances, however, I find the environment inside the residence changed after Herman had completed the first paragraph of his statement.   At this point Robinson's focus turned from what he had told Herman was the object of his investigation, the impersonation incident, to a new and previously undisclosed law enforcement interest, ascertaining whether Herman was a felon in possession of a firearm.   After obtaining permission to enter the residence to discuss Herman's alleged impersonation of an ATF agent, Robinson began questioning Herman about firearms in the house.   Tr. at 16-17.   Not satisfied with Herman's denials, Robinson asked for and received permission to "look around."   Tr. at 21.   When Agent Robinson did not find any weapons, he returned to Herman and asked if he had any ammunition in the residence.   Tr. at 78.   Herman responded yes and immediately retrieved a box of bullets from the kitchen.   Tr. at 78.   Upon seizure of the ammunition, Agent Robinson no longer assured Herman he was not under arrest and instead warned him that "[n]ow we have a problem." Tr. at 78.

Robinson testified that he told Herman that "as a convicted felon, he's prohibited from having ammunition" and that he was going to "turn the matter over to the U.S. Attorney's Office" to decide whether he was going to be arrested.   Tr. at 31.   While it is unclear how long it took Robinson to speak with the U.S.

Attorney's office, Robinson does confirm that he wanted Herman to complete "a few more parts of the affidavit" after Herman was advised that his possession of the ammunition was a crime.   Tr. at 31.   Robinson testified that ordinarily when he takes over writing a statement, "a lot of times I put in a sentence that says 'I have no problem with S.A. Robinson transcribing my statement.'"   Tr. at 30.   However, that proviso was not in Herman's statement.

Although Robinson and Jobe were both witnesses to the relevant events of May 23rd, the government chose only to call Robinson.   As stated earlier, Robinson's recollection of several material events (whether he told Herman a search dog would be called if he did not consent to the search, what portion of Herman's statement had been written at the time the ammunition was found, was Herman with him or with Jobe during the search) was less than certain.   Based on the proof adduced at the suppression hearing, I find that once Robinson seized the ammunition, told Herman "now we have a problem" and called the prosecutor for advice on arresting Herman, a reasonable person in Herman's shoes would have believed that he was not free to leave.   At that point, further questioning of Herman should not have occurred without Herman being advised of his rights under Miranda.   Accordingly, it is my Report and Recommendation that the second part of Herman's statement (that portion that was written in Robinson's handwriting) be suppressed as obtained in violation of the defendant's Miranda rights.

11

Motion to Suppress the Ammunition: The only physical evidence obtained on May 23, 2007 was the box of ammunition Herman gave to Robinson, and Herman seeks to suppress it as the "fruit" of an illegal search.   The government, on the other hand, contends that the seizure of the ammunition was obtained by virtue of a consent search.

Based on the facts adduced at the suppression hearing, I find that the ammunition was not seized as the result of a search so the consent analysis is inapplicable.   To be sure, Robinson conducted a search of the premises, but the proof at the hearing confirmed that nothing was found or seized.   When Robinson later asked Herman if he had any ammunition, Herman immediately retrieved the ammunition and surrendered it to Robinson.   Tr. at 78.   There is no evidence in the record to suggest that Herman was threatened, tricked or coerced into retrieving the ammunition or that his free will was so overpowered that his retrieving the ammunition was not voluntary.   To the contrary, at that point in time Herman was trying to cooperate with the agents as best he could in the hope that they would leave.   Therefore, there was no search per se.   See United States v. Messina, 507 F.2d 73, 76 (2d Cir. 1974)(where police simply took what defendant had chosen to give, there was no seizure in connection with a search); United States v. Juliano, No. 99 CR. 1197(AGS), 2000 WL 1206745, at *2 (S.D.N.Y. Aug. 24, 2000)(denying defendant's motion to suppress incriminating evidence found in

12

defendant's automobile, after finding that defendant voluntarily provided agents with the keys to his car, thereby "giving the agents implied consent to enter the vehicle"); <u>United States v. Esposito</u>, 484 F. Supp. 556, 559-60 (E.D.N.Y. 1980)(denying defendant's suppression motion after concluding that the defendant voluntarily produced the incriminating item of evidence to the officers); <u>United States v. Retolaza</u>, 398 F.2d 235, 238-39 (4th Cir. 1968)(no illegal search and seizure where individual voluntarily identifies where incriminating items of evidence were secreted and surrenders them). That Herman now regrets his cooperative behavior is not a valid basis to find the agents acted unlawfully.

To the extent Herman is claiming that Robinson should not have asked him if he had any ammunition in the residence without first advising him of his <u>Miranda</u> rights, I have already determined that Herman's <u>Miranda</u> rights did not attach until <u>after</u> the ammunition was surrendered and Robinson announced, "[n]ow we have a problem." Hence, Herman's actions in retrieving the ammunition was not the fruit of a custodial interrogation.

### Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress (Docket #18) be **granted in part and denied in part.**

13

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: May 23, 2008
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: May 23, 2008
        Rochester, New York

_____

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).